Kari A. Rudd (SBN 268288)
Claire Johnson Raba (SBN 271691)
Bay Area Legal Aid
1035 Market Street, 6th Fl.
San Francisco, CA 94103
Phone: (415) 982-1300
Fax: (415) 982-4243
KRudd@baylegal.org
CJohnson@baylegal.org

Attorneys for Plaintiff
GHIDEI FESSAHAIE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GHIDEI FESSAHAIE ) | Case No. |
| ) | |
| Plaintiff, ) | COMPLAINT FOR INJUNCTIVE AND |
| ) | DECLARATORY RELIEF AND |
| vs. ) | DAMAGES; AND DEMAND FOR JURY |
| ) | TRIAL |
| NATIONSTAR MORTGAGE, LLC ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff GHIDEI FESSAHAIE ("Plaintiff") alleges as follows:

**I. INTRODUCTION**

1.  Ms. Fessahaie brings this complaint against her mortgage servicer, NATIONSTAR MORTGAGE, LLC. ("Nationstar" or "Defendant") for injunctive relief and damages due to Defendant Nationstar's "dual tracking" in violation of federal regulations governing mortgage servicing (CITE), as well as the California Homeowner Bill of Rights, (Cal. Civil Code §§2923.6, 2923.7 and 2924.10 ). Ms. Fessahaie also brings this action pursuant to California Business and Professions Code Section 17200 *et. seq.*, to enjoin Defendant Nationstar's unlawful, unfair and fraudulent business practices in the servicing of Ms. Fessahaie's mortgage loan. Furthermore, Ms. Fessahaie brings this action for negligence in

1

COMPLAINT AND DEMAND FOR JURY TRIAL

assessing Ms. Fessahaie's eligibility for foreclosure prevention alternatives, including a loan modification.

2. Defendants plan to sell Ms. Fessahaie's home in a trustee's sale on February 2, 2015 without providing a meaningful opportunity for her to participate in programs that would allow her to avoid foreclosure.

## II. PARTIES

3. At all times relevant in this Complaint, Ms. Fessahaie was and is a competent adult who resides in Contra Costa County, California.

4. At all times relevant in this Complaint, Ms. Fessahaie has been the title owner of the property located at 6 Addison Court, Pittsburg CA 94565 in Contra Costa County ("the home"), a single-family home, and she has occupied the home as her principal residence.

5. Defendant Nationstar is a business organization doing business in the State of California. It is registered as a limited liability company with the California Secretary of State, identifying its jurisdiction as Delaware and listing an "entity address" in Dallas, Texas.

6. Nationstar is the mortgage servicer for Ms. Fessahaie's loan.

7. Upon information and belief, Defendant Nationstar conducts more than 175 foreclosures per year.

## III. JURISDICTION

8. Jurisdiction in this Court is proper pursuant to 28 USC § 1331, as this case involves federal claims under the Real Estate Settlement Procedures Act. This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 USC § 1367(a) because they are so closely related to the original-jurisdiction claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this Court because Plaintiff's home is located in Contra Costa County, California the acts alleged in this Complaint occurred in Contra Costa

COMPLAINT AND DEMAND FOR JURY TRIAL

County, California and Plaintiff's injuries and damages occurred in Contra Costa County, California. Nationstar has purposefully established minimum contacts in California such that maintenance of this action does not offend traditional notions of fair play and substantial justice.

### IV. INTRA-DISTRICT ASSIGNMENT

10. Pursuant to L.R. 3-2 (c) & (d), this action should be assigned to the San Francisco Division or the Oakland division because a substantial part of the events or omissions which give rise to Plaintiff's claims occurred in Contra Costa County and the real property which is the subject of this action is located in Contra Costa County.

### V. FACTUAL BACKGROUND

11. Ms. Fessahaie is a borrower on a loan bearing the account number 614589380, which is secured by a first lien on the home, in the form of a Deed of Trust recorded in the Contra Costa County Recorder's office ("mortgage loan").

12. The mortgage loan was originated on or about May 4, 2006 by the originating lender, "Countrywide KB Home Loans, a Countrywide Mortgage Ventures, LLC series Lender" ("Countrywide") and Mortgage Electronic Registration Systems, Inc. ("MERS"), the nominee for the originating lender. The original principal balance of the mortgage loan was $432,208.00. The purpose of the loan was to pay for the home.

13. Upon information and belief, at all relevant times, Countrywide regularly extended consumer credit payable by agreement in more than four installments and/or for which payment of a finance charge was required; originated 1 or more mortgages in any 12 month period through a mortgage broker; was the entity to whom the mortgage loan was initially payable on the face of the loan documents; made or invested in mortgage loans aggregating more than $1 million per year; and intended to sell the mortgage loan on the secondary market to the Federal National Mortgage Association ("Fannie Mae"), the Government National Mortgage Association ("Ginnie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac") or another financial institution from which the

mortgage loan would be purchased by Freddie Mac. Therefore, the mortgage loan is a "federally related mortgage loan" pursuant to 12 USC § 2602.

14. Upon information and belief, Nationstar services numerous federally-related mortgage loans. Nationstar is the person responsible for servicing the mortgage loan in this case. This means that Nationstar receives scheduled periodic payments from Ms. Fessahaie and/or her co-borrower, including amounts for escrow accounts, and makes payments of principal and interest and such other payments as may be required pursuant to the terms of the loan.

15. Ms. Fessahaie's co-borrower is her husband Teklom Beher Kelete. After an incident of domestic violence, the Superior Court of California, County of Alameda, issued a criminal protective order dated April 30, 2012 against Mr. Kelete, and protecting Ms. Fessahaie. To the best of Ms. Fessahaie's knowledge, Mr. Kelete then left the country. Since this time, Mr. Kelete has not contributed anything to household expenses. Ms. Fessahaie is the sole provider for her three children, and her income alone is insufficient to cover her household expenses and make the mortgage payments. As a result of this financial hardship, Ms. Fessahaie eventually fell behind on her mortgage payments.

16. Ms. Fessahaie applied for a Home Affordable Modification Program (HAMP) Loan modification by fax, on or about May 6, 2014. She submitted the standard Request for Mortgage Assistance ("RMA") form available on the Making Home Affordable Program website, and documentation of her income including a profit and loss statement.

17. Ms. Fessahaie did not receive any written correspondence from Nationstar saying that they received the May 2014 application. Ms. Fessahaie did not receive any notice from Nationstar stating that there was any problem with the application or that she needed to send any additional documents to complete the application.

18. At some time in July, 2014 Ms. Fessahaie received a Notice of Default.

COMPLAINT AND DEMAND FOR JURY TRIAL

19. Ms. Fessahaie submitted another HAMP application packet by fax on October 20, 2014 with updated information. This was a complete application, and included an updated standard RMA form, a copy of her criminal protective order, a separate detailed hardship letter, a 4506-T request for transcript of tax return, documentation of wage income spanning three pay periods, and a profit and loss statement for her self-employment income.

20. Nationstar failed to acknowledge receipt of the October 2014 application and failed to notify Ms. Fessahaie whether she needed to submit any additional information in order to complete her application.

21. Nationstar then recorded a Notice of Trustee Sale setting a sale date of November 24, 2014.

22. Immediately upon receiving the Notice of Trustee Sale, on November 4, 2014, Ms. Fessahaie, through her attorney, sent a Notice of Error by fax and certified mail to Nationstar on the basis that they planned to conduct a foreclosure sale in violation of the "dual-tracking" prohibitions in 12 CFR Section 1041.41(g) and California Civil Code Section 2923.6(c). The letter included a copy of Ms. Fessahaie's October 2014 application.

23. Defendant responded in a letter dated November 26, 2014 in which Defendant requested a homeowner's association statement and an updated 4506-T form from Ms. Fessahaie, and stated that the Trustee's Sale would be postponed until January 5, 2015. This letter also provided, for the first time, a single point of contact for Ms. Fessahaie's application, Andrew Harrison.

24. Ms. Fessahaie, through her attorney, provided the documents that Defendant had requested and sent a new Notice of Error on December 9, 2014 because Defendant had not rescinded the Notice of Trustee's Sale and was still planning to conduct a foreclosure sale in violation of federal regulations and state law prohibiting "dual tracking."

COMPLAINT AND DEMAND FOR JURY TRIAL

25. Defendant sent a letter to Plaintiff's attorney dated December 22, 2014 requesting additional documents, specifically 30 days of consecutive paystubs with year to date earnings and a "divorce decree, separation agreement, or other type of agreement." In this letter Defendant also assigned Ms. Fessahaie a new single point of contact, Ashley Martin, who could be reached at the phone number (866) 316-2432 EXT. 9566946.

26. Defendant responded to the Notice of Error in a letter dated December 29, 2014 in which Defendant requested that Ms. Fessahaie provide "actual pay stubs" (as she had previously provided printouts from her employer's payroll system which is maintained electronically), a divorce decree or quit claim deed awarding the home to Ms. Fessahaie in her divorce, and the 4506T form (which Defendant had already submitted multiple times). In this letter, Defendant stated that the trustee's sale would be postponed but that this "does not stop the foreclosure proceedings." This letter also identified Ms. Fessahaie's single point of contact as Ashley Martin and stated that she could be reached at the phone number 480-467-0947.

27. Ms. Fessahaie, through her attorney, provided the documents requested to the extent possible, as Ms. Fessahaie's divorce case is still pending and there is no final order distributing property. Specifically, she provided copies of two consecutive paper paystubs, which she was able to obtain from her employer, the 4506T form, and a copy of a court order in Ms. Fessahaie's divorce case which provides that the court may sign documents on Teklom Kelete's behalf if Nationstar requires his signature and he does not cooperate with the loan modification process. Ms. Fessahaie also submitted a new notice of error, through her attorney, on January 20, 2015 because Defendant still had a Trustee's Sale scheduled for February 2, 2015 in violation of the dual-tracking prohibitions.

28. On January 28 and January 29, 2015 Plaintiff's attorney was unable to reach anyone or leave a voice message at the phone numbers provided for Ashley Martin.

29. On January 29, 2015 Plaintiff's attorney learned from the Trustee Wolf Law Firm that the Trustee's Sale had been postponed to March 9, 2015.

COMPLAINT AND DEMAND FOR JURY TRIAL

30. Ms. Fessahaie has suffered severe emotional distress at the thought of losing her and her children's home. Ms. Fessahaie's home is unique and irreplaceable.

31. As of the filing of this complaint Nationstar has not rescinded the Notice of Trustee's Sale but instead instructed its Trustee, Wolf Law Firm to place Ms. Fessahaie's account "on hold." A trustee's sale date is still on calendar for March 9, 2015 and, upon information and belief, Wolf Law Firm will proceed immediately with a sale if Nationstar removes the hold on the foreclosure. This scenario creates a precarious situation that is extremely distressing to Ms. Fessahaie.

32. Ms. Fessahaie has suffered monetary damages in an amount to be proven at trial including but not limited to: lost wages due to taking time off of work on numerous occasions to meet with her attorney in response to Nationstar's actions; and fees that Nationstar has charged to Ms. Fessahaie's mortgage loan account as a result of delaying the review of her application for assistance and prematurely initiating the foreclosure process.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION: VIOLATION OF MORTGAGE SERVICING REGULATIONS, FAILURE TO CORRECT ERROR

33. Ms. Fessahaie re-alleges and incorporates by reference each of the preceding paragraphs herein.

34. The loan is a "federally-related mortgage loan" as that term is defined under 12 USC § 2602, and therefore subject to the Real Estate Settlement Procedures Act ("RESPA"), 12. USC §§ 2601 *et. seq.,* and the regulations promulgated under that statute, Regulation X, 12 CFR § 1024.41 *et seq.*

35. Nationstar is therefore a "servicer" of a "federally related mortgage loan" as these terms are defined under RESPA, 12 USC §§ 2605(i)(2)-(3), and is therefore subject to the requirements of RESPA and Regulation X.

36. A borrower may file an action pursuant to 12 USC § 2605(f) to enforce certain provisions of RESPA, including Regulation X § 1024.41.

37. Nationstar violated Reg. X in the following ways:

    i. Failure to acknowledge Ms. Fessahaie's May 6, 2014 loan modification application within 5 business days. 12 CFR § 1024.41(b)(2);

    ii. Failure to acknowledge Ms. Fessahaie's October 20, 2014 loan modification application within 5 business days. 12 CFR § 1024.41(b)(2);

    iii. Failure to exercise reasonable diligence to obtain any missing information in connection with Ms. Fessahaie's loan modification application. 12 CFR § 1024.41(b)(1).

    iv. Recording a Notice of Trustee Sale while Ms. Fessahaie's complete application was pending. 12 CFR § 1024.41(g).

    v. Failure to rescind the Notice of Trustee Sale in response to Ms. Fessahaie's November 4, 2014 Notice of Error, and setting a new foreclosure sale date while Ms. Fessahaie's complete application was pending. 12 CFR § 1024.41(g).

    vi. Failure to rescind the Notice of Trustee Sale in response to Ms. Fessahaie's December 9, 2014 Notice of Error, and setting a new foreclosure sale date while Ms. Fessahaie's complete application was pending. 12 CFR § 1024.41(g).

    vii. Failure to rescind the Notice of Trustee Sale in response to Ms. Fessahaie's January 20, 2015 Notice of Error, and setting a new foreclosure sale date while Ms. Fessahaie's complete application was pending. 12 CFR § 1024.41(g).

38. As a result of these violations, Defendant is liable for actual damages pursuant to 12 USC § 2605(f)(1)(A).

39. Nationstar's repeated violations of Regulation X outlined above constitute a "pattern or practice of noncompliance" which subjects Nationstar to statutory damages up to $2,000 pursuant to 12 USC § 2605(f)(1)(B).

40. If Ms. Fessahaie prevails in this action, Nationstar is also liable for reasonable attorneys fees and costs pursuant to 12 USC § 2605(f)(3).

**SECOND CAUSE OF ACTION:**
**INJUNCTIVE RELIEF (C.C. § 2924.12) FOR**
**VIOLATIONS OF CALIFORNIA HOMEOWNER BILL OF RIGHTS,**
**(C.C. §§ 2923.6, 2923.7 & 2924.102)**

41. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs herein.

42. California Civil Code Section 2923.6(c)(1) states in relevant part:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent *shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending.* A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until . . . (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

*Id.* (emphasis added).

43. Upon information and belief, Defendants plan to proceed with a trustee's sale of the home before providing Ms. Fessahaie a written determination of her application, which would be a further violation of Section 2923.6(c).

44. These practices are commonly known as "dual tracking."

//

//

//

//

COMPLAINT AND DEMAND FOR JURY TRIAL

45. California Civil Code Section 2924.10(a) provides in relevant part:

> When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, *the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt*. In its initial acknowledgment of receipt of the loan modification application, the mortgage servicer shall include the following information:
> (1) A description of the loan modification process, including an estimate of when a decision on the loan modification will be made after a complete application has been submitted by the borrower and the length of time the borrower will have to consider an offer of a loan modification or other foreclosure prevention alternative.
> (2) Any deadlines, including deadlines to submit missing documentation, that would affect the processing of a first lien loan modification application.
> (3) Any expiration dates for submitted documents.
> (4) Any deficiency in the borrower's first lien loan modification application.
> (b) For purposes of this section, a borrower's first lien loan modification application shall be deemed to be "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

*Id.* (emphasis added).

46. In violation of Section 2924.10(a), Nationstar failed to provide written acknowledgement by May 13, 2014, five business days after Nationstar received Ms. Fessahaie's May 6, 2014 application.

47. Nationstar violated Section 2924.10(a) a second time when it failed to acknowledge receiving her October 20, 2014 application by October 27, 2014.

48. Nationstar failed to identify any missing documents or any deficiencies in Ms. Fessahaie's May and October 2014 applications.

49. California Civil Code Section 2923.7 provides that "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." C.C. § 2923.7(a).

//

//

//

COMPLAINT AND DEMAND FOR JURY TRIAL

50. A "single point of contact" means:

> . . . "[A]n individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive. The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process.

*Id.* at § 2923.7(e).

51. Nationstar did not assign a single point of contact until November 26, 2014, six months after Ms. Fessahaie first requested a foreclosure prevention alternative.

52. When Nationstar assigned a single point of contact, Ashley Martin, it did not provide a means of direct communication with her, as Plaintiff's attorney was unable to reach Ms. Martin at either of the numbers Nationstar provided.

53. Therefore, Nationstar was in violation of its obligations under Section 2923.7.

54. Civil Code Section 2924.12(a) states:

> (1) If a trustee's deed upon sale has not been recorded, *a borrower may bring an action for injunctive relief to enjoin a material violation* of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.
> (2) Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied.

*Id.* (emphasis added).

55. As of this filing, the trustee's sale has not yet occurred. Accordingly, no trustee's deed upon sale has been recorded.

56. Nationstar has engaged in material violations of Sections 2923.6, 2923.7 and 2924.10 that will result in irreparable harm to Ms. Fessahaie by causing her to lose her home, and also lose any opportunity to avoid foreclosure through the HAMP, or any other programs that may be available to Nationstar borrowers.

57. Therefore, Ms. Fessahaie is entitled to injunctive relief against Defendant Nationstar pursuant to Section 2924.12(a)(1) in order to prevent a trustee's sale. The

injunction should remain in place until Defendant can demonstrate that it has remedied all material violations.

## THIRD CAUSE OF ACTION
### INJUNCTION AGAINST UNFAIR BUSINESS PRACTICES, CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200

58. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs herein.

59. Business and Professions Code Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising."

60. Business and Professions Code Section 17203 provides that any person who engages in such practices "may be enjoined in any court of competent jurisdiction."

61. Nationstar engaged in unlawful business practices when it repeatedly violated federal mortgage servicing regulations and the California Homeowners' Bill of Rights by failing to process Ms. Fessahaie's complete application for assistance, failing to provide a single point of contact, recording foreclosure documents while Ms. Fessahaie's complete application was pending, scheduling a foreclosure sale before providing a decision on Ms. Fessahaie's complete application, and repeatedly failing to correct its ongoing material violations of state and federal law after receiving Ms. Fessahaie's Notices of Error.

62. These acts and practices are "unlawful" as they are in violation of RESPA, Regulation X, HBOR and the common law.

63. Nationstar's conduct was fraudulent and is likely to be misleading, because it provided notices to Ms. Fessahaie that were misleading as to her rights under the law, and they are likely to deceive the public and impact consumers' legal rights.

64. Nationstar's conduct was unfair in that it violated the public policy underlying federal and state laws and regulations prohibiting "dual tracking," which are designed to protect borrowers from premature and unnecessary foreclosure, and preserve

neighborhood stability by keeping families in their homes. Nationstar's conduct not only offends public policy, but it causes substantial injury to Ms. Fessahaie and other consumers and has no utility to outweigh this substantial harm.

65. Without an injunction, Ms. Fessahaie will lose her home as a direct, proximate and foreseeable result of Nationstar's unlawful, unfair and fraudulent conduct.

66. Ms. Fessahaie also has lost money in an amount to be proven at trial as a direct and proximate result of Defendant's unlawful and unfair business practices, including but not limited to: lost wages for taking time off of work in order to respond to Nationstar's actions; and fees and charges that Nationstar has added to her mortgage loan account as a direct and proximate result of those actions.

67. Defendant has been unjustly enriched and should be ordered to make restitution to Ms. Fessahaie pursuant to Business and Professions Code sections 17203 and 17204.

68. Therefore, Ms. Fessahaie may bring this action as a "person who has suffered injury in fact and has lost money or property as a result of unfair competition." Bus. & Prof. Code § 17204.

**FOURTH CAUSE OF ACTION:**
**NEGLIGENCE**

69. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs herein.

70. Nationstar is a participating servicer in the Making Home Affordable Program. Nationstar volunteered to participate in HAMP through a Servicer Participation Agreement with the Federal National Mortgage Association ("Fannie Mae") as financial agent of the United States, on September 24, 2010.

71. Nationstar stepped outside its normal role as servicer and assumed additional responsibilities and duties when it undertook efforts to evaluate borrowers for

foreclosure alternative programs through the Making Home Affordable Program. *See Alvarez v. BAC Home Loans Servicing LP.*, 176 Cal. Rptr. 3d 304 (Cal. Ct. App. 2014).

72. Therefore, at all times relevant in this complaint, Nationstar had a duty to exercise reasonable care and skill in servicing Ms. Fessahaie's loan. This duty includes, but is not limited to, complying with Making Home Affordable program guidelines, complying with Regulation X and the California Homeowner Bill of Rights, and fairly and accurately evaluating Ms. Fessahaie's eligibility for all available foreclosure prevention alternatives.

73. Nationstar breached its duty to Ms. Fessahaie by failing to acknowledge her complete application, failing to assign a single point of contact for 6 months, and "dual tracking."

74. Nationstar knew or reasonably should have known that these actions would cause Ms. Fessahaie to lose her home in an unnecessary foreclosure, and preclude her from taking advantage of available alternatives to foreclosure.

75. As a direct and proximate result of Nationstar's negligent actions, Ms. Fessahaie has suffered and will suffer injuries including but not limited to: emotional distress, accrual of interest and fees on her mortgage loan account, lost wages, and the loss of her home in foreclosure if the pending trustee's sale is not enjoined. Had Nationstar used proper skill and care in the handling of Ms. Fessahaie's application, she would have a fair opportunity to avoid foreclosure and enter into a program that would allow her to keep her home without suffering emotional distress and incurring the other damages listed above.

## VII. REQUEST FOR RELIEF

Plaintiff prays for relief as follows:

1. For an injunction pursuant to Civil Code § 2924.12 enjoining Defendant from taking any action to foreclose on the home until they can show that they have complied with the relief requested in paragraph 2;

2. For an order rescinding the Notice of Default and Notice of Trustee's Sale, and compelling Defendant to conduct a fair, accurate, honest, and complete evaluation

of Ms. Fessahaie's eligibility to obtain a HAMP modification or other foreclosure alternative available to Nationstar borrowers.

3. For a determination that the Notice of Default and Notice of Trustee's Sale are void and legally ineffective;

4. For a determination that Plaintiff is the prevailing party in this action;

5. For monetary damages Plaintiff has sustained due to Defendant's actions in an amount to be proven at trial;

6. For statutory damages of $2,000 under RESPA;

7. For attorney's fees and costs incurred in this action, to be determined at a later date;

8. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

BAY AREA LEGAL AID

Dated: January 30, 2015

By /s/ Kari A. Rudd

Kari A. Rudd,
Attorney for Plaintiff
GHIDEI FESSAHAIE

### DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this Complaint.

BAY AREA LEGAL AID

Dated: January 30, 2015

By /s/ Kari A. Rudd

Kari A. Rudd,
Attorney for Plaintiff
GHIDEI FESSAHAIE

COMPLAINT AND DEMAND FOR JURY TRIAL